USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/13/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
REYNALDO MATIAS,

            Plaintiff,                      **FINDINGS OF FACT**
                                        **AND CONCLUSIONS OF LAW**
   -v-                                      20-CV-2325 (JLC)

UNITED STATES OF AMERICA,

            Defendant.
-----------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

      Plaintiff Reynaldo Matias commenced this action against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671, for personal injuries allegedly sustained as a result of an accident on March 19, 2019 in the Bronx. By agreement, the Court conducted a bench trial on the issue of liability only earlier today.

      After reviewing the submissions of the parties, and after having considered the evidence at trial and assessed the credibility of the witnesses, the Court makes the following findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure. To the extent that any findings of fact may be deemed conclusions of law, they shall also be considered conclusions of law; to the extent that any conclusions of law may be deemed findings of fact, they shall also be considered as such.

      I note at the outset that the parties have stipulated to the following:

**STIPULATED FACTS**

      1. Plaintiff Reynaldo Matias ("Mr. Matias") is a "covered person" as defined by New York Insurance Law § 5102(j).

1

2. At all relevant times, Deputy United States Marshal ("Deputy Marshal") Catherine Brady (formerly Catherine Brady-Gonzalez, and hereinafter "Deputy Marshal Brady") was an employee of Defendant the United States for purposes of the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* ("FTCA").

3. Defendant the United States is a "covered person" as defined by New York Insurance Law § 5102(j).

4. On March 19, 2019, at approximately 8:30am, a motor vehicle incident (the "Accident") occurred at the intersection of Boston Road and Pelham Parkway South in Bronx, New York (the "Intersection"), between an automobile operated by Deputy Marshal Brady and an electric motor scooter operated by Mr. Matias. The points of contact between the vehicles were as follows: the front tire of Mr. Matias's electric motor scooter and the middle of the passenger side of Deputy Marshal Brady's vehicle.

5. Prior to the Accident, Mr. Matias was driving eastbound on Pelham Parkway South intending to make a right turn onto Boston Road southbound.

6. Prior to the Accident, Deputy Marshal Brady was driving southbound on Boston Road and continuing southbound through the Intersection.

7. At the Intersection, Boston Road is a two-way street. The southbound portion consists of three lanes: the left-hand lane is left-turn only; the middle lane is straight only; and the right lane is undesignated.

8. At the Intersection, Pelham Parkway South is a one-way street. It has four lanes: the left-hand lane is left-turn only; the second lane from the left is left turn or straight; the third lane from the left is straight or right turn; and the right-hand lane consists of an entrance to Pelham Parkway South via an exit ramp from Bronx River Parkway.

9. At the time of the Accident, the traffic light was green for drivers southbound on Boston Road and red for drivers eastbound on Pelham Parkway South.

10. At the time of the Accident, the road was dry and conditions were clear.

11. At the time of the Accident, the sun was approximately 15 degrees south of east (105˚) and 16 degrees above the horizon.

12. Following the Accident, Mr. Matias was taken by ambulance to Jacobi Medical Center in the Bronx.

13. New York City Police Department Officer Juan Marte ("Officer Marte") interviewed Deputy Marshal Brady at the scene of the Accident and Mr. Matias at Jacobi Medical Center.

14. In his police accident report, dated March 20, 2019, Officer Marte assessed Mr. Matias with the following Apparent Contributing Factors: Driver Inattention/Distraction and Driver Inexperience.

15. Under the FTCA, the United States is liable for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private

person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

16. Because the accident in question occurred in the Bronx, the laws of New York State and New York City govern the issues of liability and damages in this action. *See, e.g., Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988); *Holland v. United States*, 918 F. Supp. 87, 89 (S.D.N.Y. 1996).

17. To establish that a defendant acted negligently under New York law, the plaintiff must establish three elements by a preponderance of the evidence: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985); *see Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 177 (2d Cir. 2013).

18. Under New York law, the burden is on the plaintiff to prove, by a preponderance of the evidence, that he is entitled to a damages award. *See Craig Test Boring Co., Inc. v. Saudi Arabian Airlines Corp.*, 138 F. Supp. 2d 553, 560 (S.D.N.Y. 2001).

I now make the following findings of fact and conclusions of law (some of which will incorporate, in whole or in part, the stipulated facts just recited):

**FINDINGS OF FACT**

    **A.    The March 19, 2019 Accident**

1. On the morning of March 19, 2019, Deputy Marshal Brady was driving to work southbound on Boston Road in the Bronx.

2. The same morning, Mr. Matias was driving an electric motorcycle to work eastbound on Pelham Parkway South in the Bronx. Mr. Matias had been driving this vehicle for just three to four months as of March 19, 2019.

3. At some time between 7:30 a.m. and 8:30 a.m., Deputy Marshal Brady was proceeding straight through the intersection of Boston Road and Pelham Parkway South (the "Intersection"), driving southbound on Boston Road in the middle of three southbound lanes, with a green light.

4. At the same time, Mr. Matias was present in the Intersection, having intended to take a right turn from eastbound on Pelham Parkway South to southbound on Boston Road.

5. At this time, the front tire of Mr. Matias's electric motorcycle made contact with the middle passenger side of Deputy Marshal Brady's automobile in the Intersection (the "Accident").

6. At the time of the Accident, the light was red for drivers proceeding eastbound on Pelham Parkway South.

7. Mr. Matias testified that he had stopped in the Intersection and was waiting to make a right turn onto Pelham Parkway South when his motorcycle was struck by Deputy Marshal Brady's vehicle.

8. Deputy Marshal Brady testified that she was driving straight and under the speed limit when Mr. Matias's motorcycle struck the side of her vehicle while he was driving into the Intersection and turning right. She testified that she observed Mr. Matias's vehicle only moments before he struck the side of her vehicle, and did not have time to turn, brake, or otherwise react.

9. Following the Accident, Mr. Matias fell onto his left side, injuring his left arm and scraping the left side of his motorcycle.

10. Following the Accident, Deputy Marshal Brady and Mr. Matias spoke briefly before she called an ambulance to take him to the hospital.

11. Mr. Matias testified that Deputy Marshal Brady admitted fault during this conversation, stating that she was running late for work and that the sun was in her eyes.

12. Deputy Marshal Brady denied that she and Mr. Matias spoke about the cause of the Accident, that she was running late for work, or that the sun was in her eyes.

13. Officer Marte arrived at the scene of the Accident sometime after Mr. Matias was taken to the hospital.

14. Officer Marte interviewed Deputy Marshal Brady at the scene of the Accident and Mr. Matias at the hospital.

15. Officer Marte testified, and his accident report (Exhibit 3) reflected, that Mr. Matias admitted to him that he drove through a red light into the Intersection because he could not control his motorcycle.

16. Officer Marte did not assess Deputy Marshal Brady with any Apparent Contributing Factors.  As reflected in exhibits 3 and 4, he assessed Mr. Matias with Driver Inattention/Distraction and Driver Inexperience.

17. Mr. Matias denies that he made any such admission to Officer Marte.

In light of the differing versions of the events giving rise to this lawsuit, the Court now makes the following credibility determinations:

### B. Credibility Determinations

18. The Court finds that both Deputy Marshal Brady's and Officer Marte's testimony regarding the Accident was credible, and that Mr. Matias's was not.  This is so for the following reasons:

19. First, it is not plausible that Mr. Matias's electric motorcycle was stopped at the time of the Accident.  The sole point of impact on Deputy Marshal Brady's vehicle was the

middle of the passenger side, which made contact with the front tire of Mr. Matias's electric motorcycle. Absent a sudden sharp turn, which no party testified to and there is no evidence of, there is no way for the side of Deputy Marshal Brady's vehicle to have made contact with a stationary object without the front of her vehicle having first made contact with it. Moreover, given her undisputed testimony that she was in the middle of three southbound lanes, her vehicle would not have made contact with Mr. Matias's motorcycle if he stopped just inside the Intersection as he testified (and Mr. Matias acknowledged that he did not know what lane Deputy Marshal Brady's car was in at the time of impact). Indeed, Mr. Matias did not explain how the Accident occurred in his testimony. He did not say, for example, that Deputy Marshal Brady turned into or swerved into him or that her car made a sudden motion. Accordingly, the Court finds that, as Deputy Marshal Brady testified and as is reflected in Officer Marte's report, Mr. Matias was driving through the Intersection at the time of the Accident against a red light.

20.     Second, Mr. Matias's testimony that Deputy Marshal Brady admitted to him that the sun was in her eyes is not plausible. According to the National Oceanic and Atmospheric Administration, as is reflected in Exhibit 6 in evidence, on March 19, 2019, at the Intersection and at the time of the Accident (give or take a few minutes, which is not material in these circumstances – and in any event, the parties stipulated to the time being 8:30 a.m.), the sun would have been at a position of 105 degrees, or 15 degrees south of east. The sun would therefore have been almost precisely in front of a driver proceeding eastbound on Pelham Parkway South (as Mr. Matias was) and to the left of and slightly behind a driver proceeding southbound on Boston Road South (as Deputy Marshal Brady was). Given that, if anything, the sun would have been in Mr. Matias's eyes, and not Deputy Marshal Brady's eyes, Mr. Matias's

testimony that Deputy Marshal Brady admitted to him that the sun was in her eyes is not plausible.

21. Third, Mr. Matias's testimony that Deputy Marshal Brady admitted to him that she was running late for work is not credible. If the Court accepts Mr. Matias's testimony that the accident occurred around 7:30 a.m. and Deputy Marshal Brady was not scheduled to be at her job until 9:00 a.m. then it would not make sense for her to say that she was running late one-and-a-half hours before she was due to report to work in Brooklyn.

22. Finally, Mr. Matias, who admitted to not having a driver's license or a motorcycle license, admitted to Officer Marte that he could not control his motorcycle as he was making a right turn onto Boston Road and collided with Deputy Marshal Brady's vehicle. Officer Marte's testimony on this crucial point is credible. There is no reason for him to lie about this point. To the extent counsel for Mr. Matias has suggested that the Officer might have done so because a law enforcement officer was involved in the accident, the Court rejects such a suggestion as entirely unsupported by anything in the record. Moreover, there is nothing in the record – notwithstanding plaintiff's hospitalization – to suggest that he was not alert and coherent at the time he was interviewed by Officer Marte, even if he had received medication for his injuries.

## CONCLUSIONS OF LAW

### A. Under the Federal Tort Claims Act, The New York Law of Negligence Applies

1. The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), 2671-80, applies to this case because Deputy Marshal Brady was an employee of the United States acting within the scope of her employment at the time of the March 19, 2019, accident.

2. In an action brought pursuant to the FTCA, "courts are bound to apply the law of the state . . . where the [tort] occurred." *Makarova v. United States*, 201 F.3d 110, 114 (2d Cir. 2001); *see also* 28 U.S.C. § 1346(b). The law of the state of New York applies to this case because the accident at issue occurred in New York.

3. To establish that a defendant acted negligently under New York law, the plaintiff must establish three elements by a preponderance of the evidence: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985); *see Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 177 (2d Cir. 2013).

### B. Plaintiff Failed to Establish that Deputy Marshal Brady Breached Her Duty of Care

4. It is undisputed here that Deputy Marshal Brady lawfully entered the Intersection pursuant to a green light, *see* N.Y. Veh. & Traf. L. § 1111(a), and that Mr. Matias was unlawfully within the intersection against a red light, *see id.* a§ 1111(d); *see also id.* § 1111(d)(2) (right turns on red prohibited in New York cities with a population of one million or more, *i.e.*, New York City).

5. Under New York law, "a driver who lawfully enters an intersection with a green light may still be found partially at fault for an accident if he or she fails to use reasonable care to avoid a collision with another vehicle in the intersection." *Siegel v. Sweeney*, 266 A.D.2d 200, 202 (1999).

6. Aside from the discredited testimony of Mr. Matias, there is no evidence that Deputy Marshal Brady failed to use reasonable care. The light was green, she was driving under the speed limit, and, given exhibit 6, the sun was not in her eyes.

7.      Accordingly, Deputy Marshal Brady was not negligent.

**C.      Plaintiff's Own Negligence Was the Sole Cause of the Accident**

8.      Mr. Matias, meanwhile, drove through a red light into the Intersection, making contact with the side of Deputy Marshal Brady's vehicle before she could react.  *Cf. Rosenberg v. Kotsek*, 837 N.Y.S.2d 343, 344 (2d Dep't 2007) (driver is negligent "in failing to see [an] automobile which by proper use of his senses he should have seen").

9.      Even if Mr. Matias were correct that his vehicle was stopped when its front tire somehow made contact with the side of Deputy Marshal Brady's vehicle, he would still have been negligent in entering the Intersection against a red light, and there would still be no credible evidence that Deputy Marshal Brady failed to exercise reasonable care to avoid his vehicle unlawfully located in the intersection.  Plaintiff's counsel makes much of Deputy Marshal Brady's testimony that she kept her eyes on the road, and therefore did not look to the right as she should have, and therefore would have seen plaintiff.  But, as a matter of law, she was entitled to assume that plaintiff was obeying the traffic laws.  *Cf. Rosenberg*, 837 N.Y.S.2d at 344 (driver "was entitled to anticipate that the plaintiff would obey traffic laws").

10.     Further, Officer Marte did not issue Deputy Marshal Brady any summons or ticket as a result of the accident or assess her with any factors contributing to the accident, while he assessed Mr. Matias with Driver Inattention/Distraction and Driver Inexperience.  These assessments are consistent with Mr. Matias's admitted and observed traffic violations.

11.     In sum, Deputy Marshal Brady was not negligent, and Mr. Matias's own negligence was the sole cause of the Accident.

**CONCLUSION**

Let me close by saying that this accident was unfortunate to say the least. I am sensitive to the fact that Mr. Matias alleges that he received significant injuries as a result of this accident. But not all accidents constitute negligence that is actionable as a matter of law.

As a result of the Court's findings and conclusions, which the Court has read into the record and will docket, the Clerk of the Court is directed to enter judgment in favor of the Government and close this case.

**SO ORDERED.**

**Dated: October 13, 2021**
        **New York, New York**

_____
JAMES L. COTT
United States Magistrate Judge

11